UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DINEL JEAN,<br><br>  Plaintiff,<br><br>v.<br><br>PENSKE TRUCK RENTAL,<br><br>  Defendant. | Case No. 3:19-cv-00521<br><br>Judge Eli J. Richardson<br>Magistrate Judge Alistair E. Newbern |

To:  The Honorable Eli J. Richardson, District Judge

### REPORT AND RECOMMENDATION

Before the Court in this employment discrimination action is Defendant Penske Truck Rental's motion for summary judgment under Federal Rule of Civil Procedure 56. (Doc. No. 21.) Pro se Plaintiff Dinel Jean has responded in opposition. (Doc. No. 28.) Considering the record evidence as a whole, and for the reasons that follow, the Magistrate Judge will recommend that the Court grant Penske's motion.

### I.  Factual and Procedural Background[1]

Penske hired Jean, who is African-American and Haitian, on September 19, 2016. (Doc. Nos. 1-2, 24.) Jean worked as a truck technician in Penske's La Vergne, Tennessee, location. (Doc. No. 24.) Sometime in 2017, Jean complained to District Service Manager Jason Dempsey that supervisor Nathan Oakes was acting unprofessionally toward him. (*Id.*) Dempsey asked Jean if he would like to transfer to Penske's downtown Nashville, Tennessee, location, where Dempsey's

---

[1]  The facts in this section are drawn from Jean's verified EEOC charge (Doc. No. 1-2), Penske's statement of undisputed material facts (Doc. No. 24), which Jean has not contested (Doc. No. 29), and Penske's summary judgment exhibits (Doc. Nos. 22-2, 23–23-4).

office was located and which was closer to Jean's home. (*Id.*) Jean declined the offer. (*Id.*) Dempsey spoke to Oakes about the need to communicate effectively and professionally with all employees and moved Oakes to a different shift so that he would not be supervising Jean. (*Id.*)

Later that year, another supervisor told Dempsey that he believed Jean had gone to Kentucky Fried Chicken while still clocked in as working. (*Id.*) Dempsey met with Jean and human resources representative Corinthians Williams. (*Id.*) Jean denied any wrongdoing. (*Id.*) During the meeting, Jean told Dempsey and Williams that coworker Robert Armstrong had been calling him names including "African Booty Scratcher" and that Armstrong and Oakes had been joking around at work and acting unprofessionally. (*Id.* at PageID# 257, ¶ 10.) Dempsey spoke to Armstrong and Oakes, and Armstrong publicly apologized to Jean. (Doc. No. 24.)

On October 27, 2017, Jean was in a car wreck on his way home from work and totaled his truck. (*Id.*) Jean was scheduled to work the next day but called in to report the wreck and to say he could not come in. (*Id.*) For the next five workdays, Jean was out on previously approved paid time off for a trip to Florida. (*Id.*) When he returned from Florida, Jean requested additional time off under the Family Medical Leave Act (FMLA) because the wreck had caused his preexisting back pain to flare up. (*Id.*) Jean's FMLA leave request was approved by FMLASource, Penske's third party leave administrator. (*Id.*)

On November 3, 2017, while Jean was on FMLA leave, three of his coworkers told Branch Service Manager Scott Braxton that, on October 20, 2017, they saw Jean steal degreaser by filling up a fifty-five gallon drum in the back of his truck. (*Id.*; Doc. Nos. 23-1–23-4.) Braxton reported this to Dempsey, who asked Braxton to write a statement and collect written statements from the three employees, one of whom was Armstrong. (Doc. Nos. 23-1, 23-4, 24.) A couple of days earlier, a technician had notified Braxton that the degreaser was unexpectedly empty. (Doc.

No. 24.) Dempsey had also noticed a recent increase in costs for washing supplies at the La Vergne location. (*Id.*) Dempsey and Braxton consulted with Williams and decided to wait until Jean returned from leave to address the suspected theft. (*Id.*)

On December 8, 2017, while still on leave, Jean came to the La Vergne location unannounced because he needed to renew his Department of Transportation certification and wanted information about the required paperwork and renewal process. (*Id.*) Braxton met with Jean in Braxton's office and Dempsey joined the meeting by telephone. (*Id.*) Dempsey spoke to Jean about the suspected degreaser theft, and Jean denied any wrongdoing. (*Id.*) Dempsey told Jean that he had written statements from three of Jean's coworkers regarding the incident and asked Jean if he had filled any fifty-five gallon drums in the back of his truck. (*Id.*) Jean stated that he had filled up a drum with water, not degreaser. (*Id.*) Dempsey told Jean that the water was also Penske's property. (*Id.*) Jean said the conversation was causing him stress and left. (*Id.*)

Even though he did not want to lose a good technician, Dempsey decided to terminate Jean's employment based on the coworkers' statements, the missing degreaser, the recent cost increase, and Jean's reaction when confronted about the theft allegations. (*Id.*) Williams supported Dempsey's decision. (*Id.*) The only other Penske employee Dempsey had fired for theft was a technician at the downtown Nashville location who stole a headlight bulb. (*Id.*) That individual was a white male in his early twenties who, as far as Dempsey knew, was not disabled and had not taken FMLA leave. (*Id.*)

Jean initiated this action on June 24, 2019, by filing an employment discrimination complaint against Penske. (Doc. No. 1.) Jean alleged that Penske discriminated and retaliated against him based on his race, national origin, and disability in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990 (ADA), and the FMLA. (*Id.*) On

June 1, 2020, Penske filed a motion for summary judgment under Rule 56 (Doc. No. 21), supported by a memorandum of law (Doc. No. 22), a statement of undisputed material facts (Doc. No. 24), and several exhibits (Doc. No. 22-2, 23–23-4). Penske argues that Jean has failed to establish a prima facie case of discrimination or retaliation under Title VII, the ADA, or the FMLA and has failed to rebut Penske's legitimate, nondiscriminatory reason for terminating his employment. (Doc. No. 22.) Jean filed an unsigned statement in response to Penske's motion for summary judgment, repeating his version of the events that led to the termination of his employment and asserting that he did not steal the degreaser. (Doc. No. 28.) Jean also filed a response to Penske's statement of undisputed material facts, handwriting the word "admitted" across the top of the document and in response to fourteen of Penske's thirty-one asserted facts. (Doc. No. 29.) Jean did not dispute any of the remaining asserted facts. (*Id.*) Penske did not file an optional reply.

## II. Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party

meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

**III.     Analysis**

    **A.     Title VII Claims**

Title VII prohibits employers from discharging or otherwise discriminating against any individual with respect to the compensation, terms, conditions, or privileges of his employment because of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). It also prohibits employers from discriminating against any individual in retaliation for opposing such discrimination. *Id.* § 2000e-3(a).

To prevail on Title VII claims at the summary judgment stage, a plaintiff must present either direct or circumstantial evidence of discrimination or retaliation. *See Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018). "Direct evidence is that evidence which, if believed, requires no inferences to conclude that unlawful [discrimination or] retaliation was a motivating factor in the employer's action." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543–44 (6th Cir. 2008). Because Jean has not presented any such direct evidence, the Court must evaluate his Title VII claims under the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Rogers*, 897 F.3d at 771; *Imwalle*, 515 F.3d at 544. Under the *McDonnell Douglas* framework, a plaintiff relying on circumstantial evidence must first make out a prima facie case of discrimination or retaliation. *Rogers*, 897 F.3d at 772. If he does so, "the burden shifts to the employer to proffer a legitimate, nondiscriminatory [or nonretaliatory] reason for its decision." *Id.* (alteration in original) (quoting *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009)). If the employer meets its burden, "the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were pretextual." *Id.* (quoting *Upshaw*, 576 F.3d at 584).

### 1. Discrimination

To establish a prima facie case of discrimination based on race or national origin, Jean must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for his position; and (4) he was treated less favorably than someone outside the protected class who was similarly situated. *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). Penske argues that Jean cannot satisfy the fourth requirement because he has not identified any similarly situated individual who was treated more favorably. (Doc. No. 22.) Penske asserts in its statement of undisputed material fact that the only other employee Dempsey ever fired for theft was a white male. (Doc. No. 24.) Penske has therefore carried its initial burden

to demonstrate that there is no genuine dispute of material fact concerning Jean's Title VII discrimination claim. *See Celotex Corp.*, 477 U.S. at 323. Jean has not disputed Penske's assertion that the only other employee Dempsey fired for theft was white (Doc. No. 29) and has not pointed to any evidence in the summary judgment record that would allow a reasonable jury to conclude that Penske treated Jean less favorably than a similarly situated individual who was not African-American or Haitian. Jean has therefore failed to establish a prima facie case of discrimination under Title VII.

Even if Jean could establish a prima facie case of race or national origin discrimination under Title VII based on the record evidence, Penske has articulated a legitimate, nondiscriminatory reason for terminating Jean's employment that is supported by record evidence—Dempsey's belief that Jean stole degreaser based on the testimony of three coworkers, a report of missing degreaser, and a recent increase in cleaning supply costs. Jean bears the burden to show by a preponderance of evidence that this reason was actually a pretext for discrimination. *See Rogers*, 897 F.3d at 777. To meet this burden, Jean must produce evidence sufficient for a reasonable jury to find "'that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Id.* (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007)). Jean has not pointed to any summary judgment evidence sufficient to support a finding that Penske's asserted reason for firing Jean was actually pretext for discrimination. Jean did not dispute Penske's assertion in its statement of undisputed material facts that Dempsey fired Jean because he believed Jean had stolen the degreaser. (Doc. No. 29.) During his deposition, Jean stated that he does not know what motivated Dempsey's decision to fire him. (Doc. No. 22-2.) He therefore has not carried his burden to show pretext.

7

Consequently, the Court finds that Penske is entitled to summary judgment on Jean's Title VII discrimination claims.

### 2. Retaliation

To establish a prima facie case of retaliation, Jean must demonstrate that: (1) he engaged in protected activity under Title VII; (2) Penske knew about his exercise of protected rights; (3) Penske subsequently took an adverse employment action against him; and (4) there was a causal connection between the adverse employment action and the protected activity. *See Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). Penske again argues that Jean cannot establish the fourth element because he has not produced any evidence of a causal connection between his internal complaints about Oakes and Armstrong's behavior and Dempsey's decision to terminate Jean's employment. (Doc. No. 22.) Jean has not responded to this argument.

The Supreme Court has held that retaliation claims under Title VII "must be proved according to traditional principles of but-for causation," which means that a plaintiff must prove "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Here, Jean would have to prove that he would not have been fired if he had not complained to Dempsey and Williams about Oakes and Armstrong calling Jean names, joking around, and otherwise acting unprofessionally. Penske submitted a sworn declaration from Dempsey asserting that the only reason he fired Jean was because he believed that Jean had stolen degreaser. (Doc. No. 23.) Jean has not disputed this assertion, and the record evidence shows that Dempsey responded to Jean's complaints about Oakes and Armstrong by transferring Oakes to a different shift and prompting Armstrong to apologize to Jean. (Doc. Nos. 23, 24.) The Court finds that Jean has not pointed to any record evidence based on which a reasonable jury could conclude that Dempsey would not

8

Case 3:19-cv-00521    Document 32    Filed 04/20/21    Page 8 of 12 PageID #: 289

have fired him if he had not complained about Oakes and Armstrong. Penske is therefore entitled to summary judgment on Jean's Title VII retaliation claim.

### B. ADA Discrimination Claim

The ADA prohibits employment discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." *Id.* § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A).

Where, as here, a plaintiff has not presented direct evidence of employment discrimination based on disability, "[a] plaintiff may prove employment discrimination under the ADA based upon circumstantial evidence using the prima facie case and burden shifting method articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981)." *Chaniott v. DCI Donor Servs., Inc.*, 481 F. Supp. 3d 712, 724 (M.D. Tenn. 2020). To establish a prima facie case of disability discrimination under the ADA, Jean must demonstrate that: "(1) he is an individual with a disability; (2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodations; and (3) he was discharged solely by reason of his handicap." *Williams v. London Util. Comm'n*, 375 F.3d 424, 428 (6th Cir. 2004) (quoting *Cotter v. Ajilon Servs.*, 287 F.3d 593, 598 (6th Cir. 2002)). If Jean establishes a prima facie case, the burden shifts

to Penske "'to articulate some legitimate, nondiscriminatory reason' for its actions." *Chaniott*, 481 F. Supp. 3d at 724 (quoting *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008)). If Penske meets this burden, Jean "must show by a preponderance of the evidence that the proffered explanation is a pretext for discrimination." *Id.*

Penske argues that Jean cannot establish a prima facie case of disability discrimination because he cannot show that he is disabled within the meaning of the ADA. (Doc. No. 22.) Specifically, Penske points to Jean's admission during his deposition that he "never requested any formal accommodation from Penske because of [his] back, . . . never disclosed [him]self as being a disabled individual, [and] just managed [his] back through pain medication . . . as needed[.]" (Doc. No. 22-2, PageID# 223:5–9.) Jean's verified EEOC charge asserts that he is "disabled" and that, "[o]n October 28, 2017, [he] was placed on short term disability due to [his] disability." (Doc. No. 1-2, PageID# 20.) Medical records show that Jean sought medical care for his back injury on November 28, 2017, and was diagnosed with "[l]ow back pain[,] [l]umbar spondylosis[,] [and] [f]oraminal stenosis." (Doc. No. 1-1, PageID# 11.) The medical provider recommended physical therapy and steroid injections and gave Jean written permission "to remain off work until December 26, explain[ing] [that] this [was a] one time thing only" and, "[h]opefully, he [would] get improvement with physical therapy and injection." (*Id.*) Even assuming that this evidence, construed in Jean's favor, is sufficient to allow a reasonable jury to find that Jean was disabled within the meaning of the ADA, Penske has articulated a legitimate, nondiscriminatory reason for terminating Jean's employment supported by record evidence, and Jean has not offered any evidence that Penske's asserted reason was pretextual.

The Court therefore finds that Penske is entitled to summary judgment on Jean's ADA discrimination claim.

10
Case 3:19-cv-00521    Document 32    Filed 04/20/21    Page 10 of 12 PageID #: 291

### C. FMLA Retaliation Claim

The FMLA provides that covered employees may take up to twelve weeks of leave per year for the reasons listed in the statute, which include an employee's own "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The statute defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *Id.* § 2611(11)(A)–(B). Under the FMLA, "any eligible employee who takes leave . . . shall be entitled, on return from such leave (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position . . . ." *Id.* § 2614(a)(1)(A)–(B). The statute makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter" or "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." *Id.* § 2615(a)(1)–(2).

The standard for establishing a prima facie retaliation claim under the FMLA mirrors the standard for establishing retaliation claims under Title VII. *See Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 308 (6th Cir. 2016). Because he has not presented direct evidence of FMLA retaliation, Jean "must show that (1) he engaged in an activity protected by the Act, (2) this exercise of his protected rights was known to the defendant, (3) the defendant thereafter took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action." *Id.* (citing *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003)). Like Title VII retaliation claims, FMLA retaliation claims require a showing of but-for causation. *Sharp v. Profitt*, 674 F. App'x 440, 451 (6th Cir. 2016); *Harris v. City of Lewisburg*, No. 1:15-cv-00114, 2017 WL 3237780, at *7 (M.D. Tenn. July 31, 2017).

Penske argues that Jean has not shown the required causal connection between his FMLA leave and Dempsey's termination of his employment. (Doc. No. 22.) Penske submitted a sworn declaration from Dempsey asserting that the only reason he fired Jean was because he believed that Jean had stolen degreaser. (Doc. No. 23.) Jean has not disputed this assertion, and the record evidence shows that Jean's request for FMLA leave was granted and that Dempsey was waiting for Jean's leave to end before addressing the theft issue when Jean unexpectedly showed up to work. (Doc. Nos. 23, 24.) The Court finds that Jean has not pointed to any record evidence based on which a reasonable jury could conclude that Dempsey would not have fired Jean if he had not taken FMLA leave. Penske is therefore entitled to summary judgment on Jean's FMLA retaliation claim.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Defendant Penske Truck Rental's motion for summary judgment (Doc. No. 21) be GRANTED and that judgment be entered in Penske's favor.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 20th day of April, 2021.

ALISTAIR E. NEWBERN
United States Magistrate Judge